1

2

3

4

5

6

7                       IN THE UNITED STATES DISTRICT COURT FOR THE

8                              EASTERN DISTRICT OF CALIFORNIA

9

10   JESSICA HARTUNG,                          )      1:08-cv-00960-AWI-GSA
                                               )
11             Plaintiff,                       )      FINDINGS AND
                                               )      RECOMMENDATIONS
12   vs.                                        )      REGARDING DEFENDANTS'
                                               )      MOTION TO COMPEL
13                                              )      ARBITRATION
     J.D. BYRIDER, INC.; JD BYRIDER OF          )      (Document 41)
14   CHANDLER; CARNOW ACCEPTANCE                )
     COMPANY; JOHN ANDERSON; and T-             )
15   MOBILE USA, INC., and DOES 1 through 10    )
     inclusive,                                 )
16                                              )
               Defendants.                      )
17   _____)

18

19         Defendants Byrider Franchising, Inc. (erroneously sued and served as J.D.

20   Byrider, Inc.) and Grace Finance, Inc. dba CNAC (erroneously sued and served as

21   Carnow Acceptance Company) move for an order compelling arbitration and staying

22   proceedings.  Plaintiff Jessica Hartung opposes Defendants' motion, alleging the

23   arbitration provision in the relevant agreement is unconscionable.  The Court considered

24   the matter suitable for decision without oral argument and vacated the hearing.  Local

25   Rule 78-230(h).  For the reasons that follow, the Court recommends that the motion to

26   compel arbitration and stay this case be GRANTED.

27   ///

28

**Background**

On March 11, 2008, Plaintiff Jessica Hartung filed a complaint in the United States District Court, Northern District of California against Defendants J.D. Byrider, Inc., JD Byrider of Chandler, Carnow Acceptance Company, John Anderson, T-Mobile USA, Inc and Does 1 through 10.[1]

The complaint alleges violations of the Fair Debt Collection Practices Act, the California Rosenthal Act, negligence and invasion of privacy.  According to the complaint, Plaintiff purchased a used car from J.D. Byrider and obtained financing from Carnow Acceptance Company.  She fell behind on her payments in October 2007.  J.D. Byrider and Carnow Acceptance Company assigned her debt to Defendant John Anderson for collection.  In January 2008, Defendant John Anderson allegedly contacted T-Mobile and identified himself as Plaintiff's father.  T-Mobile added him as a user on Plaintiff's T-Mobile account as John Haverty.  Thereafter, Defendant Anderson allegedly used information obtained from T-Mobile to begin unlawful and harassing collection attempts, including frequent calls and text messages to Plaintiff.  Plaintiff voluntarily surrendered the car.

In July 2008, during the course of this litigation, the parties stipulated to dismiss defendant Grace Auto, Inc. and transfer the matter to the United States District Court, Eastern District of California, Fresno Division.  (Doc. 30).

On September 9, 2008, Defendants Byrider Franchising, Inc. (erroneously sued and served as J.D. Byrider, Inc.) and Grace Finance, Inc. dba CNAC (erroneously sued and served as Carnow Acceptance Company) filed the instant motion to compel arbitration pursuant to the Federal Arbitration Act (9 U.S.C. §§ 3, 4).

---

[1]    In July 2008, the parties stipulated to dismiss defendant Grace Auto, Inc, which was erroneously sued and served as J.D. Byrider of Chandler (Doc. 30).  On September 16, 2008, Plaintiff filed a notice of settlement, indicating she had settled with Defendant T-Mobile USA, Inc.  (Doc. 45).  On September 30, 2008, Plaintiff requested entry of default against John Anderson.  (Doc 49).  The Clerk of this Court entered his default on October 1, 2008.  (Doc. 50).

1    **Motion to Compel Arbitration**

2    *Defendants' Argument*

3    Defendants argue that Plaintiff's claims are subject to arbitration pursuant to the

4    terms of the retail installment contract at issue.  On April 5, 2007, Grace Auto sold

5    Plaintiff a vehicle in Chandler, Arizona pursuant to the terms of a Retail Installment

6    Contract and Security Agreement ("Contract").  The Contract subsequently was assigned

7    to Grace Finance.  Plaintiff signed the contract, but did not initial the arbitration

8    provision.  However, she initialed and signed her understanding that the Contract

9    contained an arbitration provision in a companion document entitled "Buyer's Statement

10   of Understanding" ("Buyer's Statement").  Defendants contend that because the Contract

11   contains a broad arbitration provision, Plaintiff's claims of negligence, violation of the

12   Rosenthal Act and invasion of privacy against Defendants Byrider Franchising, Inc.[2] and

13   Grace Finance, Inc. fall within the purview of the arbitration provision.  Accordingly,

14   Defendants assert that arbitration and a stay is appropriate.  Defendants also argue that

15   arbitration should be conducted in Arizona in accordance with the arbitration terms.

16   *Plaintiff's Argument*

17   Plaintiff argues that (1) the arbitration agreement is procedurally unconscionable

18   due to the manner in which Defendants presented it to Plaintiff and Plaintiff's failure to

19   sign it; and (2) the arbitration clause is substantively unconscionable because it essentially

20   forces borrowers such as Plaintiff to utilize arbitration as the only remedy, while

21   preserving the drafter's right to use the most prevalent non-arbitration remedies.  Plaintiff

22   also argues that it is unreasonable to move the case to Arizona.

23   *Relevant Provisions of the Contract*

24   The Contract provides in part:

25   **BY SIGNING BELOW BUYER AGREES TO THE TERMS ON**

26   ───────────────

27   2    Byrider Franchising, Inc. argues it is not a signatory to the Contract, but does not object to the
     Court granting the motion to compel arbitration.  Boston Telecommunications Group, Inc. v.

28   Deloitte Touche Tohmatsu, 278 F.Supp.2d 1041, 1048 (N.D.Cal. 2003) (nonsignatory can invoke
     protections of arbitration clause where there are allegations of concerted misconduct by the
     nonsignatory and one or more of the signatories to a contract).

**PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

**NOTICE TO BUYER**
**(1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (2) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. (3) UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. (4) THIS CONTRACT CONTAINS AN ARBITRATION OF DISPUTES PROVISION WHICH GOVERNS CERTAIN DISPUTES BETWEEN THE PARTIES.**
......

**ARBITRATION OF DISPUTES**
**Mandatory Arbitration**: Unless otherwise stated in this agreement, any "Dispute" between the parties shall, at the election of Buyer, Seller or Seller's assignee ('the Parties"), be resolved by a neutral, binding arbitration, and not by a court of law.   This procedure includes any Dispute over the interpretation, scope, or validity of this Contract, the arbitration agreement or the arbitrability of any issue ....   The arbitration procedure applies to the Parties, including their respective employees or agents, as to all matters which arise out of or relate to this Contract or are in any way connected with the purchase and sale or financing of the Property, or any resulting transaction or relationship.
**Dispute:** The term "Dispute" means any action, dispute, claim or controversy of any kind arising out, in connection with or in any way related to the sale of the Vehicle, financing, contracts, origination, servicing, service agreements, collection, reporting, or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties.  The term "Dispute," include without limitation: claims under federal or state consumer protection laws; claims in tort or contract; claims under statutes or common law; claims at law or in equity; any other past, present or future claims, counterclaims, cross-claims, third party claims, interpleaders or otherwise.
......

**FOR ALL DISPUTES COVERED BY THIS SECTION, THE PARTIES HAVE AGREED TO WAIVE THEIR RIGHT TO A TRIAL BY JUDGE OR JURY, THEIR RIGHT TO PARTICIPATE IN CLASS ACTIONS, AND THEIR RIGHT TO SEEK PUNITIVE DAMAGES, EXCEPT FOR DISPUTES AND CLAIMS NOT SUBJECT TO THIS ARBITRATION AGREEMENT.   ARBITRATION SHALL BE IN PLACE OF ANY CIVIL LITIGATION IN ANY COURT AND IN PLACE OF ANY TRIAL BY JUDGE OR JURY.**

**THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT YOUR LEGAL RIGHTS, IF YOU DO NOT UNDERSTAND ANY TERMS OF THIS PROVISION OR THE COST, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, SEEK INDEPENDENT ADVICE AND/OR CONTACT THE AMERICAN ARBITRATION ASSOCIATION AT (800) 778-7879 OR THE NATIONAL ARBITRATION FORUM AT (800) 474-2371 BEFORE SIGNING THIS CONTRACT, BY SIGNING THIS CONTRACT, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY EACH OF THE PROVISIONS,**

**COVENANTS, STIPULATION AND AGREEMENTS SET FORTH ABOVE.**

    Buyer's Initials _____

*See* Declaration of Robert Hirst in Support of Motion to Compel Arbitration and Stay Proceedings ("R. Hirst Declaration"), ExhibitA.

    *Statement of Understanding*

    The Statement of Understanding is entitled "J.D.BYRIDER (Co) Buyer's Statement of Understanding" and in relevant part reads:

> The undersigned Buyer and Co-Buyer (hereinafter jointly referred to as "I") acknowledge the following:
> ......
> 8.    I understand that the Contract provides for arbitration and that I, in certain cases, waive the right to a trial by jury for all claims covered by the arbitration provision.

R. Hirst Declaration, Exhibit B.

## Legal Standard

    The Federal Arbitration Act ("FAA") creates "a body of federal substantive law of arbitrability." Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983). Under the FAA, written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[3] Any question concerning arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999). The FAA establishes that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like

---

2 Title 9 U.S.C. § 2 states in full:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

1  defense to arbitrability." Moses H. Cone, 460 U.S. at 24-25; Simula, Inc.,175 F.3d at

2  719; Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1209 (9th Cir.1998).  The FAA

3  reflects "Congress' intent to provide for the enforcement of arbitration agreements within

4  the full reach of the Commerce Clause." Perry v. Thomas, 482 U.S. 483, 490 (1987);

5  Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 475 (9th Cir 1991).

6          "Arbitration is a matter of contract and a party cannot be required to submit any

7  dispute which he has not agreed so to submit."  AT & T Technologies, Inc. v.

8  Communications Workers of America, 475 U.S. 643, 648 (1986) (citations omitted);

9  Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,  925 F.2d 1136, 1139 (9th Cir.

10  1991).   As with any contract, the parties' intentions control.  Three Valleys Mun. Water

11  Dist.,  925 F.2d at 1139.  However, the parties' intentions are generously construed to

12  issues of arbitration.  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473

13  U.S. 614, 626 (1985).

14          The FAA "leaves no place for the exercise of discretion by a district court, but

15  instead mandates that district courts *shall* direct the parties to proceed to arbitration on

16  issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc.

17  v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original).  The court's role is limited to

18  determining: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether

19  the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic

20  Systems, Inc., 207 F.3d 1126, 1130 (9th Cir 2001).  If both questions are answered in the

21  affirmative, the FAA requires the court to enforce arbitration.  Id.

22          When a party contends issues must be decided by arbitration, Federal substantive

23  law governs the question of arbitrability.  Simula, Inc.,175 F.3d at 719.  However, the

24  federal policy favoring arbitration is inapplicable to the determination of whether a valid

25  agreement to arbitrate between the parties exists and ordinary contract principles

26  determine who is bound.  Comer v. Micor, Inc., 436 F.3d 1098, 1104 n.11 (9th Cir. 2006).

27  In determining the validity of an agreement to arbitrate, courts "should apply ordinary

28  state-law principles that govern the formation of contracts." FirstOptions of Chicago,

1   Inc.v. Kaplan, 514 U.S. 938, 944 (1995). "Thus, generally applicable contract defenses,

2   such as fraud, duress, or unconscionability, may be applied to invalidate arbitration

3   agreements without contravening § 2." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681,

4   686 (2000). "Courts may not, however, invalidate arbitration agreements under state laws

5   applicable *only* to arbitration provisions." Id.; Ticknor v. Choice Hotels Int'l, Inc., 265

6   F.3d 931, 937 (9th Cir. 2001).

7                                                  **Discussion**

8            Plaintiff does not dispute Defendants' contention that Plaintiff's claims fall within

9   the purview of the arbitration agreement. Instead, Plaintiff's opposition to arbitration is

10  that the arbitration agreement is procedurally and substantively unconscionable.

11           *Unconscionability*

12           It is well-established that unconscionability is a generally applicable contract

13  defense, which may render an arbitration provision unenforceable. See Doctor's Assocs.,

14  517 U.S. at 686-87. Under California law, courts analyze contract provisions for both

15  procedural and substantive unconscionability.[4] See Armendariz v. Found. Health

16  Psychare Servs., Inc., 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000). The

17  prevailing view in California is that procedural unconscionability and substantive

18  unconscionability need not both be present to the same degree. "'Essentially a sliding

19  scale is invoked which disregards the regularity of the procedural process of the contract

20  formation ... in proportion to the greater harshness or unreasonableness of the substantive

21  terms themselves.'" Id. (internal citations omitted). "In other words, the more

22  substantively oppressive the contract term, the less evidence of procedural

23  unconscionability is required to come to the conclusion that the term is unenforceable,

24  and vice versa." Id.  see also Mercuro v. Superior Court, 96 Cal.App.4th 167, 175, 116

25  Cal.Rptr.2d 671 (2002).

26

27  3    The law of the state in which the Contract was executed (Arizona) also provides that an arbitration
         agreement is unenforceable if it is unconscionable. Harrington v. Pulte Home Corp., 211 Ariz.
28       241, 246 (2005). It is noted, however, that the parties generally limit their argument to the law of
         the forum state (California).

1        1.    Procedural Unconscionability

2        Plaintiff contends that the arbitration agreement is procedurally unconscionable.

3    To support her argument, Plaintiff argues that (1) Defendant gave her no opportunity to

4    negotiate the pre-printed terms; (2) Defendant presented the contract on a "take-it-or

5    leave-it" basis; (3) the arbitration clause is prolix and densely-worded; (4) Defendant did

6    not explain the agreement in a meaningful way; and (5) she did not sign the arbitration

7    clause.

8        Procedural unconscionability analysis focuses on " 'oppression' or 'surprise.' "

9    Flores v. Transamerica HomeFirst, Inc., 93 Cal.App.4th 846, 853, 113 Cal.Rptr.2d 376

10   (2001). "Oppression arises from an inequality of bargaining power that results in no real

11   negotiation and an absence of meaningful choice," while "[s]urprise involves the extent

12   to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by

13   the party seeking to enforce them." Id. (citing A & M Produce Co. v. FMC Corp., 135

14   Cal.App.3d 473, 486, 186 Cal.Rptr. 114 (1982)).

15       Here, Plaintiff does not demonstrate procedural unconscionability. Plaintiff failed

16   to present evidence of the circumstances surrounding the execution of the agreement to

17   show inequality of bargaining power, an inability to negotiate or lack of a meaningful

18   choice. Plaintiff indicates that Defendants "presented" her with documents, she was

19   given the documents "to review," and Defendants played a video with a skit to explain

20   the documents. Plaintiff's Declaration, at ¶¶ 2-4. The only evidence Plaintiff offers to

21   suggest that she had to sign the Contract is her declaration that Defendants "made it

22   seem" that no one else would give her a car loan because of her bad credit. Plaintiff's

23   Declaration, at ¶ 6. Plaintiff does not explain how Defendants "made it seem" as if no

24   one else would give her a car loan. Plaintiff also asserts without explanation that she

25   "believed the agreement was not negotiable." Plaintiff's Declaration, at ¶ 7. Plaintiff

26   does not present evidence to support her "belief." She does not allege that she actually

27   was required or told by Defendants that she had to sign the document before she would be

28   sold the car. There is nothing in the record to suggest that Plaintiff would not have been

8

1    sold the car if she had refused to sign.

2           In addition, the form of the document itself does not demonstrate procedural

3    unconscionability.[5]  The arbitration clause was not hidden in a prolix form.  It was printed

4    below a bold-faced, capitalized heading entitled "**ARBITRATION OF DISPUTES.**"  It

5    included two bold-faced, capitalized paragraphs notifying the buyer that the arbitration

6    agreement waived the right to a jury trial and advising the buyer to obtain independent

7    advice before signing the contract.  The Contract also included a bold, capitalized notice

8    to the buyer that the contract contained an arbitration of disputes provision.  This bold,

9    capitalized notice is located just above Plaintiff's signature on the Contract.  R. Hirst

10   Declaration. Exhibit A.  Further, the Statement of Understanding, which Plaintiff signed,

11   included a provision notifying her that the Contract provided for arbitration.  R. Hirst

12   Declaration. Exhibit B.

13          Plaintiff also argues that the arbitration clause was contained in a consumer

14   adhesion contract, which generally satisfies the procedural unconscionability requirement.

15   A contract of adhesion is defined as "a standardized contract, imposed upon the

16   subscribing party without an opportunity to negotiate the terms." *Flores, 93 Cal.App.4th*

17   *at 853, 113 Cal.Rptr.2d 376*.  The California Court of Appeal has held that "[a] finding of

18   a contract of adhesion is essentially a finding of procedural unconscionability." *Id.*

19   However, the California courts also have held that though "adhesion contracts often are

20   procedurally oppressive, this is not always the case." *Morris v. Redwood Empire*

21   *Bancorp, 128 Cal.App.4th 1305, 1320, 27 Cal.Rptr.3d 797 (2005)*; *Dean Witter*

22   *Reynolds, Inc. v. Superior Court, 211 Cal.App.3d 758, 769, 259 Cal.Rptr. 789 (1989)*

23   ("While we recognize significant overlap between the two concepts [adhesion and

24   oppression], we are not prepared to hold that they are identical.").  Accordingly, the

25   standards for procedural unconscionability are satisfied by a finding that the arbitration

26

27   ─────────────────────

28   3       Insofar as Plaintiff contends that the arbitration clause purports to incorporate by reference
             arbitration rules that are not listed in the document, there is no indication that the absence of these
             rules resulted in surprise or oppression ro that these rules were anything but procedural in nature.
             *Cf.*  *Harper v. Ultimo, 113 Cal.App.4th 1402, 7 Cal.Rptr.3d 418 (2003)*.

9

1    provision was presented on a take-it-or-leave-it basis and that it was oppressive due to

2    "an inequality of bargaining power that result[ed] in no real negotiation and an absence of

3    meaningful choice." Flores, 93 Cal.App.4th at 853, 113 Cal.Rptr.2d 376. Here, there is

4    nothing presented to the Court to suggest that Plaintiff lacked the power to bargain,

5    except her unexplained belief. The record does not demonstrate that Plaintiff could not

6    bargain or negotiate the terms of the agreement or that she could not shop around for

7    better terms.

8           Plaintiff also generally asserts that she did not sign the arbitration clause and there

9    is no evidence that she assented to its terms or agreed to be bound by its provisions.[6]

10   Although the FAA requires a writing, it does not require that it be signed by the parties.

11   Nghiem v. NEC Electronic, Inc., 25 F.3d 1437, 1439 (9th Cir. 1994) (the FAA requires a

12   writing, but does not require that it be signed by the parties). In this case, there is a

13   signed Contract containing the arbitration provision. As noted above, the Contract

14   included a notice just above Plaintiff's signature in bold-faced, capitalized typeface

15   alerting her that the Contract contained an arbitration provision. R. Hirst Declaration,

16   Exhibit A. Additionally, Plaintiff initialed that portion of the Statement of

17   Understanding indicating her understanding that the Contract contained an arbitration

18   provision. R. Hirst Declaration, Exhibit B. Plaintiff cites nothing to support her

19   contention that her assent to the Contract did not include her assent to the arbitration

20   provision included therein.

21          For these reasons, the Court finds the record does not disclose procedural

22   unconscionability.

23          2.      Substantive Unconscionability

24          Plaintiff argues that the arbitration agreement is substantively unconscionable

25   because it is not mutual and it is one-sided in favor of Defendants. Specifically, Plaintiff

26   _____

27   3.    To the extent that Plaintiff challenges the validity or the enforceability of the Contract as a whole,
         such challenges are for the arbitrator to resolve and not for the Court. See Nagrampa v.
28       MailCoups, Inc., 469 F.3d 1257, 1263-64 (9th Cir. 2006). Accordingly, Plaintiff's contract of
         adhesion argument may be addressed insofar as it bears on the question of procedural
         unconscionability of the arbitration provision.

1  contends that Defendants have all the remedies provided by law, including the right to

2  self-help, but Plaintiff is mandated to arbitrate any of the claims she is likely to bring.

3       An arbitration provision is substantively unconscionable if it is " 'overly harsh' "

4  or generates " 'one-sided' results." Armendariz, 24 Cal.4th at 114, 99 Cal.Rptr.2d 745, 6

5  P.3d 669 (quoting A & M Produce, 135 Cal.App.3d at 486-87, 186 Cal.Rptr. 114). "[T]he

6  paramount consideration in assessing consciability is mutuality." Abramson v. Juniper

7  Networks, Inc., 115 Cal.App.4th 638, 657, 9 Cal.Rptr.3d 422 (2004).  California law

8  requires an arbitration agreement to have a "modicum of bilaterality," see Armendariz, 24

9  Cal.4th at 117, 99 Cal.Rptr.2d 745, 6 P.3d 669, and arbitration provisions that are

10  "unfairly one-sided" are substantively unconscionable, see Little v. Auto Stiegler, Inc., 29

11  Cal.4th 1064, 1071, 130 Cal.Rptr.2d 892, 63 P.3d 979 (2003).

12       Unlike the case in Flores v. Transamerica HomeFirst, Inc., 93 Cal.App.4th 846-

13  854 (2001), the arbitration agreement at issue does not require one party but not the other

14  to arbitrate its claims.  Further, the arbitration agreement expressly states, "the Parties

15  retain the right to exercise self-help remedies and to seek provisional remedies from a

16  court, pending final determination of the dispute by the arbitrator."  R. Hirst Declaration,

17  Exhibit A at p. 5.  The arbitration agreement also provides "[n]o Party waives the right to

18  elect arbitration of a Dispute by exercising self-help remedies, filing suit, or seeking or

19  obtaining provisional remedies from a court."  R. Hirst Declaration, Exhibit A at p. 5.

20  Accordingly, Plaintiff could utilize self-help remedies, seek provisional court remedies,

21  and, if (or when) Defendants pursued self-help remedies or filed suit, Plaintiff could

22  invoke the arbitration provision.

23       Plaintiff additionally contends that the arbitration agreement is substantively

24  unconscionable because of the forum selection provision.  The Contract contains a forum

25  selection provision that states: "the arbitration hearing shall be conducted in the federal

26  judicial district in which the Contract was executed by the Buyer."  R. Hirst Declaration,

27  Exhibit A, at p.4.  Defendants counter that even if unconscionable, the forum selection

28  clause may be severed.

1    Under California law, if the place and manner restriction of a forum selection

2    provision are unduly oppressive or have the effect of shielding the stronger party from

3    liability, then the forum selection provision is unconscionable.  Nagrampa, 469 F.3d at

4    1287.   A party may make such a showing by demonstrating that the proceedings in the

5    contractual forum will be "'so gravely difficult and inconvenient that the resisting party

6    will for all practical purposes be deprived of his day in court.'" Id. (citations omitted).

7    Under the circumstances, the forum selection provision appears unduly oppressive.

8    Plaintiff would be required to pay unreasonable expenses arising out of the place and

9    manner provision to arbitrate in Arizona.  Further, Plaintiff represents that she lives in

10   California, she cannot easily travel to Arizona, her attorney and most of the witnesses are

11   located in California and the actions that gave rise to the lawsuit occurred in California.

12   However, the requirement of arbitration alone is not unduly unfair.  Accordingly, the

13   unconscionable provision relating to the arbitration of the dispute in Arizona can be

14   severed from the remainder of the arbitration agreement.  Bolter v. Superior Court, 87

15   Cal.App.4th 900, 911 (2001) (unconscionability can be cured by striking arbitration

16   provisions relating to place and manner from the remainder of the arbitration agreement).

### Recommendation

17

18   Based on the above, the Court recommends:

19   1.    Defendants' motion to compel arbitration be GRANTED;

20   2.    Defendants' request for a stay of this case as to them during arbitration be

21        GRANTED;

22   3.    Plaintiff be ordered to participate in arbitration with Defendants;

23   4.    Defendants' request for arbitration in Arizona be DENIED:

24   5.    This case be stayed during the pendency of the arbitration; and

25   6.    Upon completion of arbitration, the parties be ordered to inform this Court

26        forthwith, move to lift the stay, and file appropriate documents for the

27        completion or continuation of this case.

28   These findings and recommendations are submitted to the district judge assigned to this

1   action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  Within

2   thirty (30) days of service of this recommendation, any party may file written objections

3   to these findings and recommendations with the Court and serve a copy on all parties.

4   Such a document should be captioned "Objections to Magistrate Judge's Findings and

5   Recommendations."  The district judge will review the magistrate judge's findings and

6   recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that

7   failure to file objections within the specified time may waive the right to appeal the

8   district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.  1991).

9

10

11

12

13      IT IS SO ORDERED.

14   **Dated:    October 16, 2008**                           **/s/ Gary S. Austin**

15                                                      UNITED STATES MAGISTRATE JUDGE